UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x
                                          :
BLOHM + VOSS GmbH, FORTIS                  :
BANK(NEDERLAND) N.V., and                  :
KREDITANSTALT FÜR WIEDERAUFBAU,            :
                                          :
            Plaintiffs,                    :
                                          :
        v.                                :
                                          :
The M/V OLYMPIA EXPLORER, a               :
157.90 meter Blohm + Voss GmbH            :
motor vessel, Hull No. 962,               :    05 Cv. 7753 (BSJ)
Greek official number 10996,              :
her engines, tackles, equipment,          :    **Opinion and Order**
rigging, dinghies, furniture,             :
appurtenances, etc., in rem, and          :
ROYAL WORLD CRUISES INC., her             :
Owner, in personam,                       :
                                          :
            Defendants.                    :
                                          :
EKO-ELDA ANONYMI VIOMICHANIKI &           :
EMPORIKI ETERIA PETRELAJOEIDON,           :
                                          :
            Intervening Plaintiffs,        :
                                          :
        v.                                :
                                          :
The M/V OLYMPIA EXPLORER, a               :
157.90 meter Blohm + Voss GmbH            :
motor vessel, Hull No. 962,               :
Greek official number 10996,              :
her engines, tackles, equipment,          :
rigging, dinghies, furniture,             :
appurtenances, etc., in rem, and          :
ROYAL WORLD CRUISES INC., her             :
Owner, in personam,                       :
                                          :
            Defendants.                    :
------------------------------------------x
**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/15/08

- 1 -

This is an _in rem_ admiralty action to foreclose the first preferred ship mortgage (the "Mortgage") held by Plaintiffs Blohm + Voss GmbH, Fortis Bank (Nederland) N.V., and Kreditanstalt Für Wiederaufbau (collectively "Plaintiffs") on the Defendant vessel, the M/V Olympia Explorer.

Pursuant to Federal Rule of Civil Procedure 56, Plaintiffs have moved for summary judgment against Intervening Plaintiff Eko-Elda Anonymi Viomichaniki & Emporiki Eteria Petrelajoeidon ("EKO") seeking that EKO receive nothing from the proceeds of the sale of the M/V Olympia Explorer. EKO has cross-moved for summary judgment asking the Court to determine the priority of its alleged lien on the M/V Olympia Explorer.

For the reasons set forth below, Plaintiffs' motion for summary judgment against EKO is GRANTED, and EKO's motion for summary judgment is DENIED.

## BACKGROUND[1]

Intervening Plaintiff, EKO, is a Greek corporation with its principal place of business in Athens, Greece. EKO is a subsidiary of Hellenic Petroleum, which is owned in a substantial part and managed by the Greek government. EKO's main business is selling petroleum products in Greece. Defendant Royal Olympic Cruises, Ltd. ("ROCL") is a Liberian company with its principal place of business in Greece. In

---

[1] The following undisputed facts are drawn from Plaintiffs' and EKO's Local 56(a)(1) statement, unless otherwise indicated.

2003, ROCL operated a fleet of eight vessels, including the
Defendant vessel, the M/V Olympia Explorer ("the Olympia
Explorer," "the Explorer" or the "Defendant Vessel"). The
Explorer sails under the Greek flag. ROCL is the parent company
of Defendant Royal World Cruises, Inc. ("RWC"). Plaintiff Blohm
+ Voss GmbH is the manufacturer of the Explorer. Lastly,
Plaintiffs Fortis Bank (Nederland) N.V. and Kreditanstalt Fur
Wiederaufbau (collectively "Plaintiff Banks") are the banks that
held RWC's mortgage on the Explorer.

On April 24, 2002, Blohm + Voss, Plaintiff Banks, Defendant
RWC and others executed and entered into a loan agreement
entitled "Loan Facility Agreement in respect of post-delivery
finance for 920 passenger fast cruise vessel identified as Hull
No. 92 with Blohm + Voss GmbH and to be named 'Olympia
Explorer'" (the "LFA"). (Order Granting Pls.' Mot. for Partial
Summary Judgment on the Validity and the Amount of First
Preferred Ship Mortgage, dated July 1, 2004, at 2.) Pursuant to
the LFA, Plaintiff Banks agreed to lend RWC a sum not to exceed
$104,000,000.00. (Id.) RWC "agreed to repay the amount loaned
and agreed to observe all applicable terms of the LFA." (Id.)
On April 25, 2002, RWC "made a request for a drawdown of Portion
A of the LFA in the amount of $104,323,394.00[,] . . .[t]his
drawdown was intended to be distributed in payment of part of



the Delivery Installment . . . of the final Contract Price of Defendant Vessel." (Id. (internal citations omitted).)

Sometime prior to 2003, EKO contracted with ROCL to supply fuel bunkers to its entire fleet in Piraeus, Greece, including the Defendant Vessel. Although there was no written contract, under the parties' course of business EKO would periodically advise ROCL of the price of its bunker fuel, and ROCL would fax the order for the entire fleet. (Christofilos Dep. 31, Oct. 19, 2004.) EKO would then deliver fuel to the vessels, and ROCL would pay the invoices. Pursuant to the sale terms, the invoices were to be paid within 30 days of delivery. (Id. at 38.) When the bunker fuel was delivered to vessels, ROCL retained title to the fuel.

During the 2002 summer cruise season, ROCL fell behind on its payments. By the end of the 2002 season, ROCL had accrued a $5,500,000 debt to EKO for the bunker fuel supplied to ROCL's entire fleet. In March 2003, EKO terminated its credit agreement with ROCL. In order to continue receiving fuel, ROCL agreed to pay EKO "cash in advance" for all bunker fuel deliveries to its fleet. In July 2003, ROCL and EKO entered into a second agreement whereby ROCL agreed to pay off the $5,500,000 debt to EKO in 4 lump sum payments, in exchange for EKO continuing to supply fuel to ROCL's fleet. (Verified Compl. ¶¶ 26-27.) ROCL agreed to make payments in accordance with the

following schedule: $1,100,000 on July 30, 2003; $1,500,00 on August 30, 2003; $1,400,000 on September 30, 2003; and $1,000,000 on October 30, 2003. Only the first payment was made. On August 20,3003, the companies entered into a third agreement for payment of the fuel bunkers, but ROCL failed to make any further payments.

In June 2003, in a separate transaction, Plaintiff Banks agreed to allow RWC to split the mortgage repayment installment due under the Loan Facility Agreement in October 2004, to a number of staggered payments beginning on September 30, 2003. However, RWC was unable to pay the installments due and owing on September 30, 2003, October 27, 2003, and December 2, 2003, and thus defaulted on the LFA. On December 16, 2003, RWC filed for Chapter 11 bankruptcy in Hawaii.

On January 16, 2004, Blohm + Voss and Plaintiff Banks filed the underlying complaint in this case against RWC, in personam, and the M/V Olympia Explorer, in rem, in the United States District Court for the Central District of California to foreclose the mortgage on the Explorer. On January 22, 2004, the Explorer was arrested pursuant to court order, and on February 26, 2004, the Court issued an order directing that the ship be sold at public auction.

On March 23, 2004, EKO intervened seeking the money it claims it is owed by ROCL and RWC for having supplied bunker

- 5 -



fuel to ROCL's fleet in Greece, which included the Defendant
Vessel. In its Verified Complaint in Intervention, EKO asserts
claims of breach of contract, fraudulent inducement, negligent
misrepresentation, and fraudulent conversion against RWC, in
personam, and the Explorer, in rem. In addition, EKO asserts
that it has a preferred maritime lien against the Defendant
Vessel, and requests that the Court subordinate the preferred
ship mortgage to the rights and interests of creditors, such as
EKO, which supplied necessaries, supplies, and services to the
Olympia Explorer.

On March 24, 2004, the Explorer was sold at a public
auction to Plaintiffs, who were allowed to apply their
outstanding debt to the purchase price of the ship. On May 5,
2004, the California District Court issued an order confirming
the sale of the ship. On July 1, 2004, the Court granted
partial summary judgment to Plaintiffs on the validity and
amount of the ship mortgage. Specifically, Judge Otero found
that: "1) the Mortgage was duly executed; 2) the Mortgage was
duly registered; 3) the Mortgage secured actual debt; 4) the
outstanding debt exceeds the proceeds of the sale of Defendant
Vessel; and 5) maritime liens [pursuant to 46 U.S.C. § 31301(5)]
and liens for necessaries provided in the United States
[pursuant to §§ 31326(b)(2) and 31301(4)] are senior to



Plaintiffs' preferred ship mortgage." (Partial Summary Judgment Order at 9.)

On October 25, 2004, EKO obtained a default judgment on all its claims against defendant RWC, in personam, for the amount of $1,339,341.44. EKO's claims against the Explorer, in rem, are still pending.

On September 2, 2005, this case was transferred to the Southern District of New York for the convenience of the parties.

## DISCUSSION

Plaintiffs have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). Specifically, Plaintiffs request a determination that EKO has no right to the proceeds from the interlocutory sale of the Defendant Vessel. EKO has cross-moved for summary judgment asking the Court to determine the priority of its alleged lien.

### I. Standard for Summary Judgment

A court can grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party must "demonstrate the absence of a



genuine issue of material fact." Celotex Corp. v. Catrett, 477
U.S. 317, 323 (1986). If the moving party does so successfully,
the non-moving party must present "specific facts showing that
there is a genuine issue for trial." Fed. R. Civ. P. 56(c).
The party opposing summary judgment cannot rely on "conclusory
statements or on contentions that the affidavits supporting the
motion are not credible." Ying Jang Gan v. City of New York,
996 F.2d 522, 535 (2d Cir. 1993). Nonetheless, the court must
draw all reasonable inferences and resolve all ambiguities in
favor of the non-movant. Matsushita Elec. Indus. Co. v. Zenith
Radio Corp., 475 U.S. 574, 587 (1986).

## II. Choice of Law

The primary issue in this case is whether EKO has an
enforceable maritime lien against the Defendant Vessel, which
takes priority over Plaintiffs' preferred mortgage. As a
general rule "the law of the forum administering the res governs
the priority of the liens." In re McLean Indus., Inc., 884 F.2d
1566, 1569 (2d Cir. 1989). Thus, the priority of EKO's alleged
maritime liens is governed by United States law, specifically
the Ship Mortgage Act, 46 U.S.C. Chapter 313. However, before
determining the ranking of the liens, the Court must first
determine whether EKO's tort claims give rise to a valid
maritime lien against the Defendant Vessel. See Banco de
Credito Indus., S.A. v. Tesoreria Gen., 990 F.2d 827, 832 (5th

Cir. 1993) (finding that the Court must "evaluate whether or not Spain recognizes a maritime lien [and] [a]fter Spanish law determines its substantive nature, the law of the forum (U.S.) will rank [defendant's] lien claim in the pecking order of the sale proceeds distribution").

Whether "a lien exists is a question of substantive law[,] . . . which must be applied according to choice-of-law principles." Garcia v. M/V Kubbar, 4 F. Supp. 2d 99, 103 (N.D.N.Y. 1998) (internal citations omitted). Because the Court is sitting in admiralty, it must apply federal choice-of-law rules. State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld, 921 F.2d 409, 414-16 (2d Cir. 1990). Under the maritime choice-of-law rules first established by the Supreme Court in Lauritzen v. Larsen, 345 U.S. 571 (1953), and subsequently elaborated in Romero v. Int'l Terminal Operating Co., 358 U.S. 354, and Hellenic Lines Ltd. v. Rhoditis, 398 U.S. 306 (1970), the Court looks to the following eight factors to determine what law to apply: "(1) the place of the wrongful act; (2) the law of the ship's flag; (3) the domicile of the injured party; (4) the domicile of the shipowner; (5) the place of the contract; (6) the inaccessibility of the foreign forum; (7) the law of the forum; and (8) the shipowner's base of operations." Carbotrade S.p.A. v. Bureau Veritas, 99 F.3d 86, 90 (2d Cir. 1996) (citing Rhoditis, 398 U.S. at 309; Lauritzen,

345 U.S. at 583-592; Romero, 358 U.S. at 382.). "The weight to be given each factor varies from case to case and the list is not an exhaustive one." Id.

The first factor, the place of the wrongful act, favors the application of Greek law. The communications between EKO and ROCL, and the orders and contracts for bunker fuel, upon which EKO bases its claims for negligent misrepresentation and fraudulent inducement, all took place in Greece. As to the second factor, the Defendant Vessel is of Greek registry and flew the Greek flag. The third factor — the domicile of the injured party — also favor the application of Greek law.[2] Intervening Plaintiff, EKO, is a Greek government-controlled corporation based in Greece. The fourth and eighth factors — the domicile of the shipowner and the shipowner's operations also favor the application of Greek law. Although Defendant RWC is a Liberian corporation, the Defendant Vessel was operated by ROCL. In addition, the alleged misrepresentations that are the subject of the present dispute are attributable to ROCL. Thus, ROCL is the relevant entity. ROCL is a Liberian corporation with its principal place of business in Greece. The fifth

---

[2] As noted by the Second Circuit in Carbotrade, "[i]n actuality a corporation does not have a domicile but instead has citizenship." Carbotrade, 99 F.3d at 92 n.2 (citing Moore v. General Motors Pension Plans, 91 F.3d 848, 849-50 (7th Cir. 1996) (per curiam)). "Citizenship is based on the place of incorporation and, at least for the purposes of diversity jurisdiction the principal place of the corporation's business." Id. Accordingly, the Court will look the place of incorporation and the principal place of business as the relevant factors to be considered.

factor — the place of the contract — plainly favors the application of Greek law:  All dealings between EKO and ROCL took place either by fax or phone, or through personal meetings in EKO's or ROCL's office in the Potamianos building in Piraeus, Greece.

As to the sixth factor, the inaccessibility of the forum, "this factor is more pertinent to a forum non conveniens test than to a choice of law test, and the Lauritzen Court included it as a factor to be weighed in favor of applying [American law] where the compensation scheme of another country only would permit suit in its own courts or when the plaintiff is present in that country."  Garcia, 4 F. Supp. 2d at 106 (quoting Carbotrade, 99 F.3d at 91).  "Where there is no bar to applying foreign law in the local forum, the factor is not a consideration to a choice of law decision."  Id.  Here there is no bar to the application of Greek law; therefore, this factor is entitled to little weight.

As to the last factor, the law of the forum, this "is also considered a 'weak' factor."  Id.  "Its chief function may be to add weight where there is a specific statutory law intended by Congress to apply to the circumstances."  Id.  Although the American Maritime Lien Statute recognizes a maritime lien for necessaries, which includes the fuel bunker supplied by EKO, the transaction at issue has little to no connection to the United

States, and thus is not a situation where Congress intended to have American law apply. This is not a case where necessaries were furnished to a vessel in an American port by an American supplier — circumstances which would favor the application of the American Maritime Lien Statute. Instead, necessaries were contracted for in Greece, and were furnished to a Greek ship in a Greek port by a Greek supplier. Thus, there is no sound basis for the application of American law to these circumstances, and the Court gives this factor little weight. See Metron Commc'ns, Inc. v. M/V Tropicana, No. 89-2460-CIV, 1992 WL 532637 at *5 (S.D. Fla. 1992) ("Hansen's claim is that of a non-U.S. entity furnishing goods and services to a foreign vessel in a foreign port. Such an entity is not entitled to the application of U.S. law to an in rem claim.").

The Court finds that the Lauritzen factors weigh in favor of the application of Greek law; therefore, the Court will look to Greek law to determine whether EKO's claims give rise to a lien against the Defendant Vessel.

### III. Eko Has No Maritime Lien Under Greek Law

Plaintiffs argue that although American law supports maritime liens for necessaries, which includes bunker fuel,[3]

---

[3] "'[N]ecessaries' includes repairs, supplies, towage and the use of a dry dock or marine railway." 46 U.S.C. § 31301(4). "'Supplies' are of course relative to the requirements of the individual ship and there is virtually no limit to the items which may qualify for liens on this basis." 2 Benedict on



Greek law has no corollary. When analyzing foreign law, the Court "may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Garcia, 4. F. Supp. 2d at 107 (citing Fed. R. Civ. P. 44.1). Both EKO and Plaintiffs submitted declarations by Greek lawyers testifying to the application of Greek law to the case at bar. (See Rapsomanikis Decl. (submitted on behalf of EKO) and Marouli Decl. (submitted on behalf of Plaintiffs).) However, Rapsomanikis's Declaration, submitted on behalf of EKO, fails to set forth how EKO's claims give rise to a lien against the Defendant Vessel. Marouli's Declaration, submitted on behalf of Plaintiffs, states that under Article 205 of the Greek Code of Private Maritime law only the following four categories give rise to a maritime lien: "(a) legal costs incurred in the common interest of the claimants, public dues and charges on the ship, taxes levied in connection with navigation, costs for the supervision and preservation of the ship from the time the same enters the last port; (b) claims of the master crew in connection with their employment contract and charges in favor of the Seaman's Pension Fund consequent upon their engagement a[s] well as the fines imposed or to be imposed by the Public Maritime Employment Agency; (c) expenses

Admiralty § 38 (7th ed. 2007); see also Exxon Corp. v. Central Gulf Lines, 780 F. Supp. 191, 193-94 (S.D.N.Y. 1991) (fuel bunkers qualify as necessaries for maritime liens).

and remuneration due on account of maritime assistance, salvage and refloating; and (d) compensation owed to ships, passengers and cargo by reason of collision of ships." (Marouli Decl. ¶ 3.) Thus, Marouli concludes that "[u]nder Greek law, a person who provided necessaries, i.e., supplies or services, to a ship does not have a maritime lien on the ship." (Marouli Decl. ¶ 4.) Because Greek law does not recognize a maritime lien for necessaries, "the shipowner and his mortgage take precedence over the shopkeeper and his stores." Payanotis Sotiropoulus, Liens for Necessaries and Arrest of Ships Under Geek Law, 12 Tul. Mar. L.J. 299, 299-300 (1988).

Marouli's interpretation of Greek law is supported by federal case law. As noted by the District Court for the Southern District of Florida in Metron Communications, Inc. v. M/V Tropicana, No. 89-2460-CIV, 1992 WL 532637 at *3 (S.D. Fla. 1992),

> Greek law takes a narrow view of the types of claims which give rise to a maritime lien to be enforced against a vessel in rem. The Greek Code of Private Maritime Law recognizes certain special maritime liens which arise only in maritime cases and give security on the proceeds of the auction of the vessel. These liens include only salvage claims, collision claims, claims arising from wages of master and crew and charges due to the Seamen's Pension Fund, legal costs incurred for the common interest of all creditors, charges and taxes in connection with navigation, and costs of maintenance of the vessel in the last port.

- 14 -

Thus, "Greek law simply does not recognize a maritime lien for the types of goods and services provided by [EKO]." Id. Moreover, EKO's claims against the Defendant Vessel for misrepresentation, conversion and fraudulent inducement do not fit any of these categories listed in Article 205 of the Greek Code of Maritime Law and thus fail to give rise to a maritime lien under that provision.

EKO concedes that Greek law does not recognize a maritime lien for necessaries, fraud, misrepresentation, or conversion, but nevertheless argues that its claims of negligent misrepresentation and fraudulent inducement give rise to a lien against the Defendant Vessel under the Greek Civil Code. EKO argues that "a 'maritime lien' under the Greek Code of Private Maritime Law . . . is nothing more than a procedural priority right which is exercised at auction," and "[t]he label 'maritime lien' . . . has nothing to do with a person's substantive right to arrest a vessel to secure his claim." (EKO's Mem. of L. in Opp'n to Pls.' Mot. for Summary Judgment (hereinafter "EKO's Opp'n") at 17.) According to EKO, "Greek law provides a lien on a vessel to secure the tortuous [sic] claims of negligent misrepresentation and fraudulent inducement regarding the sale of fuel bunkers used by a vessel thereby fitting the 'maritime lien' definition." (Id. at 18.) Thus, EKO contends that it "undisputedly has a substantive right under Greek law to lien

- 15 -

the Explorer to secure its negligent misrepresentation and fraudulent inducement claims even though Greek law does not label such liens as 'maritime.'"[4]  (Id.)

The Court disagrees.  EKO's argument confounds the distinction between a maritime lien and the arrest of a ship as a security measure.  Under Greek law, the "arrest of the ship is clearly distinguished from a maritime lien."  Payanotis Sotiropoulus, Liens for Necessaries and Arrest of Ships Under Geek Law, 12 Tul. Mar. L.J. 299, 299-300 (1988).  Contrary to EKO's assertion, a maritime lien "is a substantive right, while arrest is only a procedural remedy."  Id.  "A vessel may be arrested whether or not the claim is secured by a maritime lien," and the arrest of a vessel "does not give rise to a maritime lien."  Id.

Marouli's Declaration explains the difference between arrest and a maritime lien:

> A maritime lien creates a substantive right, i.e. property interest, in the vessel, and not in other property of the shipowner unrelated to the vessel, at the time of the occurrence of an event specified in the Greek Code of Private Maritime Law, such as collision, salvage, failure to pay crew wages, and so on.  In contrast, an unpaid supplier only has a procedural right to seize any property of the debtor,

---

[4] In support of this assertion, EKO cites to the trial testimony of Michael Rapsomanikis, given in a related admiralty action in the United States District Court for the Southern District of Florida, styled Dresdner Bank v. M/V Olympia Voyager, Civ. No. 03-62225, as well as to Rapsomanikis's Affidavit submitted to this Court. (See Affirmation of Scott R. Johnston, executed December 2, 2005 (hereinafter "Johnston Aff."), Ex. N.).



and has no substantive property rights in the vessel,
and no rights that relate to the time before the
seizure.

(Marouli's Decl. ¶ 11.). EKO's own expert, Mr. Rapsomanikis,
acknowledged that under Greek law, causes of action for fraud or
negligent misrepresentation do not give rise to a maritime lien
or a lien against the vessel. Such causes of actions give rise
to an in personam claim against the debtor and a right to
proceed with a "security measure action."[5] (Johnston Aff., Ex.
G.).

Under this interpretation of Greek law, EKO's claims for
fraudulent inducement and negligent misrepresentation give rise
to "a right to proceed for security measures to be taken against
the property" (EKO's Opp'n 22 (quoting Rapsomanikis' Trial
Tr.)), such as arrest of the vessel, but they do not give rise
to a lien against the vessel.

Accordingly, the Court finds that EKO has failed to
establish that any of the claims set forth in its Verified
Complaint give rise to a maritime lien against the Defendant
Vessel under Greek law.

### IV. Default Judgment against RWC, in personam

In further support of its motion for summary judgment, EKO
argues that the default judgment obtained against RWC in

---

[5] In a security measure action, the Plaintiff can seek an order from the court
attaching the debtor's property, and upon obtaining a final judgment on the
merits it can institute a security proceeding forcing a sale of the asset.
(EKO's Opp'n 22.)



<u>personam</u> establishes, as a matter of law, that EKO is entitled to a "preferred maritime tort lien." (EKO's Opp'n 12 (citing 46 U.S.C. § 31326(b)(1)).) [6] The Court disagrees. Under American law, "[t]he vessel is a distinct entity, statutorily liable for her own debts." <u>SEL Maduro (Florida) v. M/V Antonio de Gastenata</u>, No. 85-2959-Civ-Spellman, 1990 WL 172688, at * 4 (S.D. Fla. Apr. 12, 1990). And, an <u>in</u> <u>rem</u> action is one "where a vessel or thing is itself treated as the offender and made the defendant by name or description in order to enforce a lien." <u>Madruga v. Superior Court of the State of California</u>, 346 U.S. 556, 560 (1954). Thus, EKO's default judgment against RWC <u>in</u> <u>personam</u> has no effect on EKO's claims against the Defendant Vessel <u>in</u> <u>rem</u>, as the two are distinct entities. Moreover, the default judgment against RWC on EKO's fraud claims does not establish the existence of a maritime tort lien against the vessel <u>in</u> <u>rem</u>.

In <u>Warrior Tombigbee Transp. Co., Inc. v. 5,775.674 Net Tons of Coal</u>, 570 F.Supp. 1405 (S.D. Ala. 1983), the District Court for the Southern District of Alabama was faced with a

---

[6] A preferred maritime lien as defined by 46 U.S.C. § 31301, means a maritime lien on a vessel—
    (A) arising before a preferred mortgage was filed under section 31321 of this title;
    (B) for damage arising out of maritime tort;
    (C) for wages of a stevedore when employed directly by a person listed in section 31341 of this title;
    (D) for wages of the crew of the vessel;
    (E) for general average; or
    (F) for salvage, including contract salvage . . .
    46 U.S.C.A. § 31301.

similar issue. Warrior had obtained a default judgment against the purchaser of four parcels of coal _in personam_. In determining the effect of the default judgment on Plaintiff's claims against the barges of coal _in rem_, the Court held that

> due to the fact that the coal was seized prior to this default judgment and seized pursuant to Rule C, Supplemental Admiralty Rules (rather than by means of a Marshal's execution for enforcement of the judgment), and due to the fact that <u>this coal, under the personification doctrine, is a wholly separate entity and defending party in this action, the in personam judgment against Smith has no bearing on the existence of proof of facts constituting the basis for the existence or extent of a maritime lien against this coal</u>. Instead, the factual bases for the lien, or liens, which have been asserted, must be analyzed separately.

<u>Warrior Tombigee</u>, 570 F. Supp. at 1411 (emphasis added). Similarly, EKO's default judgment against RWC <u>in personam</u> does not establish the facts necessary to find the existence of a maritime tort lien against the vessel <u>in rem</u>.

Moreover, the default judgment obtained against RWC is not a ground upon which EKO can assert the doctrines of res judicata or collateral estoppel. "For the doctrine of res judicata to be properly applied, four essential elements must be present: (1) the first action must result in a final judgment on the merits, (2) the decision must be rendered by a court of competent jurisdiction, (3) the parties to both actions, or those in privity with the parties, must be identical, and (4) the causes of action in both suits must be identical." <u>Maduro (Florida)</u>,



- 19 -



Inc. v. M/V Antonio de Gastaneta (Maduro II), 833 F.2d 1477, 1481 (11th Cir. 1987). The default judgment did not include a determination of the factual issues necessary to establish the existence of a maritime tort lien against the Explorer. Therefore, there is no identity of issues, and res judicata cannot be applied. See Maduro II, 833 F.2d 1477 (finding that previous judgment in an in personam action against the vessel owner for breach of contract did not bar subsequent action to foreclose a lien against the vessel in rem because the in personam action did not involve a determination of issues surrounding the existence of maritime lien).

As for collateral estoppel, "the general rule is well-established that default judgments lack issue-preclusive effect." In re Adler, Coleman Clearing Corp. v. Gurian, 205 Fed. Appx. 856, 857, 2006 WL 2374238, at *1 (2d Cir.2006) (citing Abrams v. Interco Inc., 719 F.2d 23, 34 n. 9 (2d Cir. 1983), Amato v. City of Saratoga Springs, N.Y., 170 F.3d 311, 323 (2d Cir.1999) (Jacobs, J. concurring), RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. e (1982)). Thus, the default judgment against RWC is not a basis for the application of collateral estoppel.

Accordingly, the Court finds that the default judgment does not establish the existence of a maritime tort lien against the Defendant Vessel.

## V. Equitable Subordination of a Preferred Ship Mortgage

EKO contends that irrespective of the lien rankings under 46 U.S.C. § 31326,[7] this Court has the power to subordinate a superior ranked lien to a lesser lien based on the inequitable conduct of the superior lien holder. See <u>Wardley Int'l Bank, Inc. v. Nasipit Bay Vessel</u>, 841 F.2d 259, 263 (9th Cir. 1988). The short answer is that EKO has no junior lien but even assuming it had one this argument fails for the following reasons. EKO maintains that Plaintiffs should have immediately foreclosed on the Explorer at the very moment that RWC first failed to make payments on the loan rather than allowing it to continue operating -- allegedly to realize the profits from the then upcoming 2004 Olympics in Athens. In effect, EKO claims that Plaintiffs colluded with RWC to hide its "deepening insolvency" from EKO so that EKO would continue to provide the Explorer with fuel bunkers. (EKO's Opp'n Mem. 32.)

"Three types of inequitable conduct are sufficient to warrant subordination: "'(1) fraud, illegality, breach of fiduciary duties; (2) undercapitalization; and (3) claimant's use of the debtor as a mere instrumentality or alter ego.'" <u>Custom Fuel Servs., Inc. v. Lombas Indus., Inc.</u>, 805 F.2d 561,

---

[7] Section 31326(b)(1) provides that "the preferred mortgage lien, including a preferred mortgage lien on a foreign vessel whose mortgage has been guraranteed under chapter 537 of this title, has priority over all claims against the vessel (except for expenses and fees allowed by the court, costs imposed by the court, and preferred maritime liens)." 46 U.S.C. § 31326(b)(1).

566 (5th Cir. 1986) (quoting <u>Matter of Missionary Baptist Found.</u> <u>of Am.</u>, 712 F.2d 206, 212 (5th Cir. 1982)). EKO does not specifically contend that any of these types of inequitable conduct occurred. Rather, EKO argues that the "Plaintiff Banks' conduct in artificially keeping ROC/RWC alive knowing that it was ROC/RWC's biggest secured creditor is inequitable as it allowed EKO to provide RWC forbearance and credit under the guise that it was solvent . . ." and such inequitable conduct by Plaintiff banks artificially prolonged RWC's life to EKO's detriment. This argument is unavailing.

The mortgage secured actual debt and was duly executed and registered in Greece. (Aff. of Nenad Krek, Ex. B at 8-9.) Moreover, "[t]he postponement of a declaration of default of a loan for a reasonable period of time, by itself, is insufficient to warrant equitable subordination of [Plaintiffs'] preferred ship mortgage." <u>Dresdner Bank</u>, 463 F.3d at 1238. Accordingly, because EKO could not succeed in subordinating Plaintiffs' mortgage lien, there is no genuine issue of material fact that would allow EKO to recover on any lien it might have against the Explorer.

\*   \*   \*

Under Greek law, the supply of fuel bunkers by EKO fails to give rise to a maritime lien against the Defendant Vessel. In addition, EKO has failed to show that, even drawing all

reasonable inferences and resolving all ambiguities in its favor, it has a maritime tort lien based on its fraud, misrepresentation and conversion claims, or that the default judgment against RWC creates a preferred maritime lien against the Explorer. Lastly, EKO has failed to show that, even assuming it has a valid lien against the Explorer, it can recover under the doctrine of equitable subordination. Thus, there are no genuine issues of material fact, and Plaintiffs are entitled to judgment as a matter of law.

**CONCLUSION**

For the aforementioned reasons, Plaintiffs' motion for summary judgment pursuant to Fed. R. Civ. P. 56 is GRANTED, EKO's motion for summary judgment is DENIED. The Clerk of the Court is directed to enter judgment accordingly and close this case.


**SO ORDERED:**


**Barbara S. Jones**
**UNITED STATES DISTRICT JUDGE**

New York, New York
July 14, 2008